UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ERIC NOLTING, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:13CV01006 HEA |
| | ) |
| CAROLYN W. COLVIN [1] | ) |
| Acting Commissioner of Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

# **OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Plaintiff's request for judicial review under 28 U.S.C. § 405(g) of the final decision of Defendant denying Plaintiff's application for Disability Insurance Benefits (DIB), 42 U. S. C. §401 *et. seq*. For the reasons set forth below, the Court affirms the Commissioner's denial of Plaintiff's application.

## **Facts and Background**

When Plaintiff appeared for his hearing on August 12, 2012 he was 48 years old, having been born in 1964. He alleged a disability onset date of October 6, 2010. Plaintiff lives in a one story duplex with his daughter, granddaughter and

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

his wife. He has on the job vocational training as a tire service technician and has been employed at a Plastics company on an assembly line.

Plaintiff awakens around 8:30 a.m. and moves to the couch where he sits for about 45 minutes. He has to get up because his legs start to feel weak and he needs to get blood flow back through his legs. He spends the greater portion of the day sitting and occasionally moving. He rarely leaves the house other than to visit his father. He does no household chores because it is too much for him and causes difficulty in his hands and arms. He wears out easily.

A Vocational Expert testified at the hearing that the Plaintiff's prior work as a tire servicer was classified as semiskilled at a heavy exertional level. His work in plastics was classified as a molding machine tender was classified as unskilled with a light exertional level. The VE also testified that Plaintiff was not able to perform his past relevant work under the limitations imposed in the hypothetical put by the ALJ. There were jobs available for the Plaintiff at the light level which included office helper, agricultural produce washer, recreation aide. There was also testimony that there were no conflict between the vocational evidence and the DOT.

The ALJ found Plaintiff had the severe impairments of peripheral vascular disease, coronary artery disease/atherosclerosis, and hearing loss.

**Standard For Determining Disability**

The Social Security Act defines as disabled a person who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir.2010). The impairment must be "of such severity that [the claimant] is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 1382c(a)(3)(B).

A five-step regulatory framework is used to determine whether an individual claimant qualifies for disability benefits. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir.2011) (discussing the five-step process). At Step One, the ALJ determines whether the claimant is currently engaging in "substantial gainful activity"; if so, then he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I); *McCoy*, 648 F.3d at 611. At Step Two, the ALJ determines whether the claimant has a severe impairment, which is "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities"; if the claimant

does not have a severe impairment, he is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c); McCoy, 648 F.3d at 611. At Step Three, the ALJ evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant has such an impairment, the Commissioner will find the claimant disabled; if not, the ALJ proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the ALJ must assess the claimant's "residual functional capacity" ("RFC"), which is "the most a claimant can do despite [his] limitations." *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir.2009) (citing 20 C.F.R. § 404.1545 (a)(1)); see also 20 C.F.R. §§ 404.1520(e), 416.920(e). At Step Four, the ALJ determines whether the claimant can return to his past relevant work, by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R. §§ 404.1520(a) (4) (iv), 404.1520(f), 416.920(a) (4) (iv), 416.920(f); McCoy, 648 F.3d at 611. If the claimant can perform his past relevant work, he is not disabled; if the claimant cannot, the analysis proceeds to the next step. *Id*. At Step Five, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to

other work, the claimant will be found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national economy. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir.2012).

## ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ in this case determined at Step One that Plaintiff had met the insured status requirements of the Social Security Act on December 31, 2015. Plaintiff has not engaged in substantial gainful activity since October 6, 2010, the alleged onset date through December 31 2008. At Step Two, the ALJ found that Plaintiff had the severe impairments of peripheral vascular disease, coronary artery disease/atherosclerosis, and hearing loss. At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that met or equaled in severity of any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1(20 CFR 404.1520 (d), 404.1525 and 404.1526, and 416.929).

Prior to Step Four, the ALJ found that Plaintiff had the residual functional capacity to perform light work except he must avoid climbing ropes, ladders, and

scaffolds; fumes, odors, dust, and gases; hazards of machinery, and hazards of heights. There are no limitations in handling/gross manipulation or frequent fingering/fine manipulation.

At Step Four, the ALJ determined that Plaintiff is not able to perform his past relevant work through the date last insured.

At Step Five, the ALJ found that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, pursuant to 20 CFR 404.1569 and 404.1569(a).

**Standard For Judicial Review**

The Court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate–Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir.2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir.2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir.2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir.2009)). In determining whether substantial evidence supports the Commissioner's decision, the Court considers both evidence that supports that decision and evidence that detracts from that decision. Id. However, the court

"'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" Id. (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir.2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir.2011) (quoting Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir.2005)). The Court should disturb the administrative decision only if it falls outside the available "zone of choice" of conclusions that a reasonable fact finder could have reached. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir.2006).

## Discussion

In his appeal of the Commissioner's decision, Plaintiff makes the following arguments: (1) The ALJ erred in determining RFC by failing to find additional limitations arising out of Nolting's impairments and supported by the record, including those involving sitting, standing, walking, lying down during the day, manipulation of objects, tardiness, absences, work breaks and sustained focus.; (2) The ALJ erred in failing to order consultative examinations regarding mental impairments, and regarding photosensitivity and chronic fatigue; (3) The ALJ erred in assessing Plaintiff's credibility by making improper and insufficient findings

regarding his testimony, and by failing sufficiently to address specific statements regarding Plaintiff's conditions and limitations

**RFC**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. See 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); see also 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p. An ALJ may discredit a claimant's subjective allegations of disabling symptoms to the extent they are inconsistent with the overall record as a whole, including: the objective medical evidence and medical opinion evidence; the claimant's daily activities; the duration, frequency, and intensity of pain; dosage, effectiveness, and side effects of medications and medical treatment; and the claimant's self-imposed restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir.1984); 20 C.F.R. § 404.1529; SSR 96–7p.

A claimant's subjective complaints may not be disregarded solely because the objective medical evidence does not fully support them. The absence of objective medical evidence is just one factor to be considered in evaluating the claimant's credibility and complaints. The ALJ must fully consider all of the

evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as:

(1) the claimant's daily activities;

(2) the subjective evidence of the duration, frequency, and intensity of the claimant's pain;

(3) any precipitating or aggravating factors;

(4) the dosage, effectiveness, and side effects of any medication; and

(5) the claimant's functional restrictions.

The ALJ must make express credibility determinations and set forth the inconsistencies in the record which cause him to reject the claimant's complaints. *Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir.2005). "It is not enough that the record contains inconsistencies; the ALJ must specifically demonstrate that he considered all of the evidence." Id. The ALJ, however, "need not explicitly discuss each *Polaski* factor." *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir.2004). The ALJ need only acknowledge and consider those factors. Id. Although credibility determinations are primarily for the ALJ and not the court, the ALJ's credibility assessment must be based on substantial evidence. *Rautio v. Bowen*, 862 F.2d 176, 179 (8th Cir.1988).

**The ALJ erred in determining RFC by failing to find additional limitations**

Plaintiff contends that the ALJ should have added additional limitations based upon the medical source statement of Dr. Rickmeyer. The claimant has the burden to prove the RFC at step four of the sequential evaluation, and the ALJ determines it based on all relevant evidence. *See Harris v. Barnhart*, 356 F.3d 926, 930 (8th Cir. 2004). The RFC formulation is a part of the medical portion of a disability adjudication as opposed to a vocational portion, which involves consideration of age, education, and work experience. Although it is a medical question, it is not based only on "medical" evidence, i.e., evidence from medical reports or sources; rather an ALJ has the duty to formulate the RFC based on all the relevant, credible evidence. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).

The ALJ properly rejected the medical source statement of Dr. Rickmeyer. Dr. Westfall, the cardiologist of Plaintiff, released him in April 2010. None of Plaintiff's physicians or the consultative examiner indicated any limitations or restrictions in Plaintiff's activities or imposed any of the limitations or restrictions noted in Dr. Rickmeyer's MSS. Plaintiff's cardiologist Louise Deane, M.D., noted one month after Plaintiff's alleged onset date that Plaintiff performed "a very physical job. . . without difficulty" . Plaintiff reported that he "felt fine" and got tired "once in a while". Dr. Deane found that Plaintiff had no chest pain, no shortness of breath, no palpitations, no light-headedness; no syncope; and his

cardiac status, include coronary artery disease, old myocardial infarction, hypertension, and cholesterol, was stable.

The ALJ properly rejected Dr. Rickmeyer's MSS as it appeared he adopted Plaintiff's subjective complaints rather than offer a medical opinion . *See Woolf v. Shalala*, 3 F.3d 1210, 1214 (8th Cir. 1993) (holding that an ALJ was justified in discrediting the opinion of a treating physician when it was based solely on the claimant's subjective complaints and was not supported by his other findings). The ALJ fully discussed the medical and other evidence of record supporting the RFC finding. See SSR 96-8p; *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (affirming ALJ's residual functional capacity determination where it was consistent with the medical records and the observations of treating physicians and others relevant evidence of pre-expiration disability (emphasis added). The RFC was supported by substantial evidence of record.

**The ALJ erred in failing to order consultative examinations regarding mental Impairments and limitations**

The ALJ is required to order medical examinations and tests only if the medical records presented do not give sufficient medical evidence to determine whether the claimant is disabled. *See Barrett v. Shalala*, 38 F.3d 1019, 1023 .The record here is devoid of any allegation or claim of mental impairment. As such, the ALJ is not obliged "to investigate a claim not presented at the time of the

application for benefits and not offered at the hearing as a basis for disability." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)). ALJ has a duty to formulate RFC based on all the relevant, credible evidence of record, including testimony, and not rely just on medical opinion evidence or subjective allegations of the claimant. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000); *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). Here the record was more than sufficient to make a determination regarding those claims alleged by Plaintiff, without the necessity to resort to claim fishing expeditions on the part of the ALJ.

**The ALJ did not properly assess Plaintiff's credibility**

Plaintiff asserts that the ALJ improperly rejected his testimony without citing specific reasons. Suffice to say though credibility questions concerning a claimant's subjective testimony are "primarily for the ALJ to decide, not the courts." *Baldwin v. Barnhart*, 349 F.3d 549, 558 (8th Cir. 2003). As previously noted, to analyze a claimant's subjective complaints, the ALJ considers the entire record, including the medical records; third party and Plaintiff's statements; the claimant's daily activities; the duration, frequency and intensity of pain or other subjective complaints; the dosage, effectiveness, and side effects of medication; precipitating and aggravating factors; and functional restrictions. See 20 C.F.R. § 404.1529; *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The Eighth

Circuit has held that although the *Polaski* factors "must be taken into account, the ALJ's decision need not include a discussion of how every *Polaski* factor relates to the claimant's credibility." *Casey v. Astrue*, 503 F.3d 687, 695 (8th Cir. 2007); *Samons v. Apfel*, 497 F.3d 813, 820 (8th Cir. 2007) ("[W]e have not required the ALJ's decision to include a discussion of how every Polaski 'factor' relates to the claimant's credibility."). The ALJ in this matter frequently referenced inconsistencies between Plaintiff's allegations and the medical record. The ALJ noted a number of specific reasons for discounting Plaintiff's subjective allegations, including the lack of objective medical evidence; mild or normal diagnostic findings; largely unremarkable physical examinations; inconsistencies in the record concerning drug use; non-compliance with medical directives; medication non-compliance; inconsistencies between Plaintiff's statements in the administrative record as to his physical functioning; and Plaintiff stopped working "a very physical job" not due to disability, but because he was terminated for misconduct.

The review of the record and the description of inconsistencies is almost exhaustive. The ALJ devoted at least five pages to a discussion of the facts and analysis of Plaintiff's credibility. The ALJ is not required to discredit every subjective allegation offered by Plaintiff. *See, e.g., Wiese v. Astrue*, 552 F.3d 728, 733-34 (8th Cir. 2009). *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010)

(quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered.")). The conclusions and findings of the ALJ are supported by substantial evidence of the record and will not be disturbed.

## **Conclusion**

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. The decision will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is affirmed.

A separate judgment in accordance with this Opinion, Memorandum and Order is entered this same date.

Dated this 27th day of February, 2014.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE